**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

SALIM BILAL-EDWARDS,         )
                                  )
        Plaintiffs,       )
                                  )
        v.             )       Civil Action No. 11-2220 (RBW)
                                  )
UNITED PLANNING         )
ORGANIZATION, et al.,      )
                                  )
        Defendants.    )
_____)

## MEMORANDUM OPINION

This case, in which the plaintiff, Salim Bilal-Edwards, filed a six-count complaint against the defendants alleging, among other things, wrongful termination, negligence, extreme and outrageous conduct, and hostile work environment,[1] is currently before the Court on the Defendants' Motion To Dismiss Counts 1, 3, 5 and 6 for Failure To State Claims upon which Relief Can Be Granted ("Defs.' Mot."), the Plaintiff's Motion to Proceed with Counts 1, 3, 5, and 6 ("Pl.'s Mot."),[2] and the Plaintiff's Memorandum in Response to Defendant[s'] Motion to Dismiss Counts 1, 3, 5, and 6 [and] Plaintiff Ask for Continuance Until Appropriate Counsel Can

---

[1]      This Court's jurisdiction arises out of the plaintiff's allegations of discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (2006), and retaliation under the Whistleblower Protection Act, 5 U.S.C. § 2302(b) (2006).  Because the defendants did not move to dismiss those two claims, they are not the subject of this memorandum opinion.

[2]      The Court construes the plaintiff's motion as his opposition to the defendants' motion to dismiss.

Assist with the Case ("Pl.'s Cont. Mot.").[3]   For the reasons explained below, the defendants'

motion will be granted, and the plaintiff's motion will be denied as moot.[4]

## I. BACKGROUND

A.  The Plaintiff's Factual Allegations

Viewed in the light most favorable to the plaintiff, the facts currently before the Court are

as follows.

One of the defendants, the United Planning Organization ("UPO"), is a "human service

agency"[5] doing business in the District of Columbia.  Compl. ¶ 5.  The other two defendants,

DeAngelo Rorie and Andrea Thomas, are the Director of Youth Services and Chief of Staff of

the UPO, respectively.  Id. ¶¶ 6-7.

The plaintiff, Salim Bilal-Edwards, is a fifty-year old man who was hired in March 2009

as an Assistant Director of Youth Services at the UPO's facility located at 301 Rhode Island

Avenue, N.W.  Id. ¶¶ 3, 8-9.  As an Assistant Director, the plaintiff was responsible for

monitoring at least some of the UPO's financial activities, including ensuring that federal grant

funds received by the UPO were expended properly.  Id. ¶¶ 20, 22-23.  The plaintiff also

"developed partnerships" with other organizations within the community on behalf of the UPO.

Id. ¶ 36.

---

[3]      The Court construes this as a motion for a continuance.

[4]      In deciding the motions, the Court considered the following filings made by the parties: the plaintiff's
Complaint ("Compl."), the Memorandum in Support of Defendants' Motion To Dismiss Counts 1,3, 5 and 6 for
Failure To State Claims upon which Relief Can Be Granted ("Defs.' Mem."), the Defendants' Memorandum in
Opposition To Plaintiff's Motion To Proceed with Counts 1, 3, 5 and 6 ("Defs.' Reply"), the Defendants'
Supplemental Memorandum in Support of Motion To Dismiss Counts 1, 3, 5 and 6 for Failure To State Claims upon
which Relief Can Be Granted ("Defs.' Supp. Mem."), the Plaintiff's Motion To Forgo Jury Trial ("Pl.'s Jury Mot."),
the Defendants' Consent to Plaintiff's Motion To Forgo Jury Trial ("Defs.' Consent"), and the Defendants'
Memorandum in Opposition to Plaintiff's Motion for a Continuance ("Defs.' Cont. Opp'n").

[5]      The defendants describe the UPO as "a District of Columbia not-for-profit corporation dedicated to
providing social services in the city."  Defs.' Mem. at 4 & n.2.

The plaintiff was instructed, but refused, to breach a contract with one of the UPO's community partners and to "submit a potentially false report" to another.  Id. ¶¶ 38-39, 45-46. Ms. Thomas and Mr. Rorie were "angry" and "enraged" with the plaintiff because of his refusals and complaints.  Id. ¶¶ 44-46.

In the course of carrying out his various duties, the plaintiff discovered that the UPO was misusing federal grant funds, id. ¶¶ 27-28, and subsequently "informed staff that [the d]efendants could not spend federal stimulus grant dollars" inappropriately, id. ¶¶ 46-48.  In addition to complaining about funding discrepancies and contracts, the plaintiff complained to Ms. Thomas about her "use of negative and derogatory names."  Id. ¶ 51.  Ms. Thomas "often referred to [the p]laintiff and another male employee as 'box lifters,'" and "referred to another male employee as her 'pole dancer.'"  Id. ¶¶ 49-50.  The plaintiff further complained to the UPO's Assistant Director of Human Resources about a female employee's allegations that Ms. Thomas was sexually harassing her.  Id. ¶¶ 57-59.  Because of the plaintiff's complaints, Ms. Thomas increased the amount of work required of the plaintiff.  Id. ¶ 61.

In December 2009, the plaintiff was transferred to UPO's 3839 Alabama Avenue, S.E. location.  Id. ¶ 8.  Both the UPO and Mr. Rorie were aware that the Alabama Avenue facility "had a history of sewage problems" and that "sewage was leaking" underneath the facility.  Id. ¶¶ 10-11, 15.  Additionally, a methane odor permeated the facility, resulting in the plaintiff and two female employees, both in their twenties, complaining to the UPO and to Mr. Rorie about the odor.  Id. ¶¶ 13-14, 16.  The "[p]laintiff inhaled [the] methane fumes for months," causing him to fall ill and suffer from migraine headaches.  Id. ¶ 16.

Neither the UPO nor Mr. Rorie responded to the plaintiff's complaints about the odor or his resulting illness.  Id. ¶ 18.  Because of the plaintiff's "complaints about the odor of methane," id. ¶ 19, and "complaints about [Ms. Thomas's] conduct toward older males on staff," as well as the plaintiff's "refus[al]  to comply with [the d]efendants' directives to engage in illegal reporting about the use of government funds,"  id. ¶¶ 69-72, the defendants terminated the plaintiff's employment.[6]

B.  Procedural History

After removing this action to this Court, the defendants filed their motion to dismiss on January 4, 2012.  Because the plaintiff did not file a response within the appropriate time frame, the defendants filed a supplemental brief arguing that, in addition to the substantive arguments raised in their initial memorandum of law in support of their motion to dismiss, the plaintiff's claims should be dismissed as conceded.  Defs.' Supp. Mem. at 2.  The plaintiff did not immediately reply, but instead notified the Court and the defendants that his attorney "ha[d] been unresponsive to phone calls and emails," and further noted that he would be proceeding pro se because he "lack[ed] the means to hire new [c]ounsel."  Pl.'s Jury Mot. at 1.  The plaintiff eventually filed his opposition to the defendants' motion to dismiss on May 14, 2012.  On May 31, 2012, the plaintiff filed his motion for a continuance, which also contained additional arguments in response to the defendants' motion to dismiss.  Pl.'s Cont. Mot. at 3-5.  The defendants opposed the plaintiff's motion in a June 13, 2012 memorandum.  Defs.' Cont. Opp'n at 1.

---

[6]     Neither the plaintiff nor the defendants provide the date on which the plaintiff's employment was terminated.

## II.  STANDARD OF REVIEW

The defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6).  A motion

to dismiss under Rule 12(b)(6) tests whether a complaint has properly stated a claim upon which

relief may be granted.  Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000).  For a

complaint to survive a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a) requires that it

contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a) does not require "detailed factual allegations," a

plaintiff is required to provide "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555–57 (2007)), in order to "give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests," Twombly, 550 U.S. at 555 (omission in original).  In other

words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to

draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

Twombly, 550 U.S. at 556).  A complaint alleging facts which are "merely consistent with a

defendant's liability . . . stops short of the line between possibility and plausibility of entitlement

to relief." Id.  (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion under this framework, "[t]he complaint must be

liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that

can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir.

1979) (internal quotation marks and citations omitted), and the Court "may consider only the

facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice," <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted).  Although the Court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief."  <u>Iqbal</u>, 556 U.S. at 679.  If "the [C]ourt finds that the plaintiff [has] failed to allege all the material elements of [his] cause of action," then the Court may dismiss the complaint without prejudice, <u>Taylor v. FDIC</u>, 132 F.3d 753, 761 (D.C. Cir. 1997), or with prejudice, provided that the Court "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

### III.  LEGAL ANALYSIS

A.   <u>The Plaintiff's Motion for a Continuance</u>

The plaintiff objects to the defendants' argument that "Counts 1, 3, 5, and 6 [should] be denied due to untimely filing by the Plaintiff," and thus requests that the Court grant him a continuance prior to ruling on the motion to dismiss in order to allow him to obtain new counsel.  Pl.'s Cont. Mot. at 1.  Because the Court finds, upon considering the merits of the plaintiff's complaint and the plaintiff's briefs, <u>see, e.g.</u>, <u>United States v. Palmer</u>, 296 F.3d 1135, 1143-44 (D.C. Cir. 2002) (considering merits of pro se motion despite untimeliness), that the plaintiff's

claims are <u>substantively</u> deficient, the plaintiff's motion for a continuance is hereby denied as moot.[7]

### B.   The Plaintiff's Wrongful Termination Claim

The plaintiff alleges that the defendants terminated his employment in retaliation for his complaints about the misappropriation of government funds, refusal to breach a contract, and complaints about the UPO's Alabama Avenue facility, Compl. ¶¶ 78-79, 83, 85, and "for insubordination," Pl.'s Cont. Mot. at 3.  The defendants argue that the plaintiff's allegations do not fit under any public policy exception to the District of Columbia's general principle that an at-will employee may be terminated at any time.[8]  Defs.' Mem. at 9-11.

"It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."[9]  <u>Adams v. George W. Cochran & Co.</u>, 597 A.2d 28, 30 (D.C. 1991).  However, courts in the District of Columbia have developed a limited number of public policy exceptions to that rule where the employee's termination offends some "mandate of public policy" that is "firmly anchored in either the

---

[7]     The Court will not entertain the plaintiff's submissions in support of his opposition to the defendants' motion to dismiss or of his motion for a continuance to the extent that they contain factual allegations not included in his complaint.  <u>St. Francis Xavier Parochial Sch.</u>, 117 F.3d at 624.  Although the plaintiff is now proceeding pro se, his complaint was filed by an attorney.  Compl. at 1.  Accordingly, for purposes of considering the merits of the complaint itself, the plaintiff is "presumed to have a knowledge of the legal system and need less protections from the [C]ourt."  <u>Richards v. Duke Univ.</u>, 480 F. Supp. 2d 222, 234 (D.D.C. 2007); <u>see also</u> <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[A lawyer] . . . cannot claim the special consideration which the courts customarily grant to <u>pro</u> <u>se</u> parties.").

[8]     The defendants argue in the alternative, Defs.' Mem. at 13-15, that the plaintiff's wrongful termination claim fails because he has a remedy under the Whistleblower Protection Act ("the Act"), 5 U.S.C. § 2302(b).  However, the Court notes that, by its terms, the Act applies only to federal employees, 5 U.S.C. § 2105(a) (generally defining an "employee" as an employee of the federal government for purposes of the Act).  As such, the plaintiff, as an employee of a private organization, would have no remedy under the Act.  Oddly, the defendants have not included the plaintiff's claim for retaliation in violation of the Whistleblower Protection Act, Compl. ¶ 94, in their motion to dismiss.

[9]     The plaintiff's complaint indicates that he brings this action as an at-will employee.  Compl. ¶ 82.

Constitution or in a statute or regulation which clearly reflects the particular public policy being relied upon and . . . [that policy] arise[s] from a statute or regulation that does not provide its own remedy."  Carson v. Sim, 778 F. Supp. 2d 85, 97 (D.D.C. 2011) (internal citations and quotation marks omitted).  These exceptions include circumstances "where an employee suffers an adverse action for refusing to break the law or for following the law to the detriment of her employer."  Chisolm v. District of Columbia, 666 F. Supp. 2d 96, 117 (D.D.C. 2009).  To invoke the public policy exception, a plaintiff must "point to [a] fundamental public policy expressed in the constitution or the statutes of the District of Columbia that support[s] [his] position."  Id. at 117; see also Davis v. Gables Residential /H.G. Smithy, 525 F. Supp. 2d 87, 102 (D.D.C. 2007) ("Plaintiff's wrongful discharge claim is deficient [when] it does not identify any public policy purportedly violated by his termination."); Robinson v. Securitas Servs., Inc., 819 F. Supp. 2d 18, 21 (D.D.C. 2011) (granting motion to dismiss claim for wrongful termination where the plaintiff "never actually cite[d] in her Complaint to any statute or municipal regulation that she claim[ed] embodie[d] or articulate[d] the public policy" but relied instead only on a "contract between the city and [the defendant] and the legislation approving it").

     The plaintiff fails entirely to state the public policy upon which his wrongful termination claim is based.  This omission requires the Court to dismiss the plaintiff's wrongful termination claim.  See Davis, 525 F. Supp. 2d at 102; Robinson, 819 F. Supp. 2d at 21.

C.  The Plaintiff's Negligence and "Extreme and Outrageous Conduct"[10] Claims

The plaintiff alleges that the UPO "was aware of sewage issues at their Alabama Avenue location but failed to ensure proper maintenance of the septic system."  Compl. ¶ 92.  According to the plaintiff, the defendants knew that the plaintiff was suffering from migraine headaches as a result of the odor at the UPO's Alabama Avenue facility, but did nothing to address the situation until a female employee complained that the odor was making her sick, as well.  Id. ¶ 99. The plaintiff states that the defendants were negligent in their failure to maintain the septic system, id. ¶¶ 91-92, and also contends that their delay in addressing his complaints constituted "extreme and outrageous conduct," id. ¶¶ 97-100.

The defendants counter arguing (1) that the plaintiff's allegations are insufficient to support a claim for negligence because he fails to identify any duty owed to him by the defendants, and that, in any event, no duty exists, Defs.' Mem. at 16-17, and (2)  "the conduct described [in the complaint] does not rise to the level of extreme and outrageous conduct required to survive a motion to dismiss,"  id. at 18.  The defendants further argue that the plaintiff's common law tort claims are barred by the District of Columbia's Worker's Compensation Act (the "Worker's Compensation Act" or "WCA" or "Act"), D.C. Code §§ 32-1503 to -1504 (2001).  Id. at 16-17.

The District of Columbia Court of Appeals has stated that the Worker's Compensation Act, which "was enacted to provide a reasonably quick and efficient manner to compensate

---

[10]       The District of Columbia recognizes no cause of action for "extreme and outrageous conduct."  Because the recognized tort of intentional infliction of emotion distress encompasses the element of "extreme and outrageous conduct," the Court construes plaintiff's extreme and outrageous conduct claim as one for intentional infliction of emotional distress, as did the defendants in their motion to dismiss.  Defs.' Mem. at 18 n.7; see Williams v. District of Columbia, 9 A.3d 484, 493-94 (D.C. 2010) ("In order to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.") (internal quotation marks omitted).

employees" for injuries that occur in the workplace, constitutes "a system in which common law

tort remedies [are] discarded for assured compensation regardless of negligence or fault."

McCamey v. D.C. Dep't of Emp't Servs., 947 A.2d 1191, 1196-97 (D.C. 2008) (quoting Ferreira

v. D.C. Dep't of Emp't Servs., 531 A.2d 651, 654 (D.C. 1987)).  The Worker's Compensation

Act is, by its own terms, the exclusive remedy available to employees for workplace related

injuries.  D.C. Code § 32-1504(a) ("The liability of an employer prescribed in [the WCA] shall

be exclusive and in place of all liability of such employer to the employee . . . on account of such

injury or death."); see also Vanzant v. Wash. Metro. Area Transit Auth., 557 F. Supp. 2d 113,

117 (D.D.C. 2008) ("The WCA is the exclusive remedy for workplace injury."); Everson v.

Medlantic Healthcare Grp., 414 F. Supp. 2d 77, 86 (D.D.C. 2006) (same).  "[I]njuries . . .

specifically intended by the employer to be inflicted on the particular employee who was

injured" fall outside the scope of the Worker's Compensation Act.  Everson, 414 F. Supp. 2d at

86 (citing, among others, Grillo v. Nat'l Bank of Wash., 540 A.2d 743, 744 (D.C. 1988))

(internal quotation marks omitted).  However, claims for intentional infliction of emotional

distress will fall within the scope of the Worker's Compensation Act where the resulting injury is

of the type ordinarily compensable by the Act.  See, e.g., Wright v. D.C. Dep't Emp't Servs., 924

A.2d 284, 286 (D.C. 2007) (observing that both physical and emotional injuries are compensable

under the Worker's Compensation Act where such injuries "occur[] in the course of the

employment and as the result of a risk involved in or incidental to the employment or to the

conditions under which it is required to be performed") (internal quotation marks omitted);

Carson, 778 F. Supp. 2d at 96-97 (dismissing claim for intentional infliction of emotional

distress where the plaintiff alleged that the defendants created a hostile work environment that

resulted in the plaintiff suffering from an "emotional breakdown" and damage to "his ability to interact with the public"); Charles P. Young Co. v. D.C. Dep't of Emp't Servs., 681 A.2d 451, 458 (D.C. 1996) (finding injury resulting from harassment and verbal abuse compensable under the Worker's Compensation Act). But see Underwood v. Nat'l Credit Union Admin., 665 A.2d 621, 624, 634 (D.C. 1995) (holding that intentional infliction of emotional distress claim premised entirely on claims of sexual harassment fell outside the scope of the Worker's Compensation Act because "sexual harassment is not a risk involved in or incidental to employment").

Because (1) the plaintiff's alleged injuries "ar[ose] out of and in the course of his employment," D.C. Code § 32-1504(b), (2) the plaintiff does not allege that the defendants "specifically intended" to inflict injury specifically on the plaintiff, Everson, 414 F. Supp. 2d at 86, and (3) the plaintiff's alleged injuries were "incidental to" his employment at the UPO's Alabama Avenue facility, Wright, 924 A.2d at 286, the Court finds that the plaintiff's claims of negligence and intentional infliction of emotional distress are barred by the Worker's Compensation Act and therefore fail as a matter of law.  Accordingly, both of these claims are dismissed.

   D.   The Plaintiff's Hostile Work Environment Claim

The plaintiff includes in his complaint a cause of action against Ms. Thomas for "hostile work environment."  Compl. ¶¶ 101-102.  The Court construes this claim as either arising under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2–1402.11(a)(1), 2–

1402.61(a)–(b) (2001), or under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-2 to -3 (2006).[11]

The plaintiff alleges that Ms. Thomas subjected him to a hostile work environment by "instruct[ing him] to acquire partnerships with outside entities" and subsequently "knowingly and willfully attempt[ing] to breach contractual obligations" arising out of those partnerships. Compl. ¶ 102.  Elsewhere in his complaint, the plaintiff also states that Ms. Thomas referred to him and another male co-worker in "negative and derogatory terms."  Id. ¶ 49.  The defendants argue that the plaintiff "fails to allege incidents severe enough to state a claim of hostile work environment," Defs.' Mem. at 22, and fails to link his age or his gender to the harassment complained of or to any protected activity under Title VII, Defs.' Mem. at 22-23.

"The law is clear that to establish a claim of discrimination based on a hostile work environment under the DCHRA, a plaintiff must show: '(1) that he is a member of a protected class, (2) that he has been subjected to unwelcome harassment, (3) that the harassment was based on membership in a protected class, and (4) that the harassment is severe and pervasive enough to affect a term, condition or privilege of employment.'"  Campbell-Crane & Assocs. v. Stamenkovic, 44 A.3d 924, 933 (D.C. 2012) (quoting Daka, Inc. v. Breiner, 711 A.2d 86, 92 (D.C. 1998) (emphasis deleted)).  Further, "in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Id. (citing Lively v. Flexible Packaging Ass'n, 830 A.2d 874, 889 (D.C. 2003)).  A plaintiff pleading under Title VII must show similar elements.  See, e.g., Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) ("To prevail on" a hostile work environment claim under Title VII,

---

[11]     The defendants construe the plaintiff's claim as one under Title VII.  Defs.' Mem. at 21 n. 8.

"a plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (internal quotation marks omitted). However, a plaintiff must first "timely exhaust [his] administrative remedies before bringing [his Title VII] claims to court."[12]  Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). Because the plaintiff states nowhere in his complaint that he filed a complaint with the Equal Employment Opportunity Commission, he cannot sustain a cause of action under Title VII. Accordingly, the Court will consider the merits of his claim only insofar as they may constitute a cause of action for hostile work environment under the DCHRA.

The first two elements of a hostile work environment under the DCHRA outlined above are easily met.  The plaintiff "is a male over 40 years of age," Compl. ¶ 75, making him a member of two protected classes.  D.C. Code § 2–1402.11(a)(1) ("It shall be an unlawful discriminatory practice" for an employer "[t]o . . . discharge[] any individual[] or otherwise to discriminate against any individual" either "wholly or partially for a discriminatory reason based upon the actual or perceived . . . sex [or] age" of the individual).  Additionally, the plaintiff contends that he was subjected to unwanted harassment by Ms. Thomas,[13] who the plaintiff

---

[12]     Because the plaintiff was employed by a private organization, he is not required to exhaust any administrative remedies in order to file suit under the DCHRA because "[g]enerally, only District of Columbia government employees are required to exhaust their administrative remedies prior to filing a lawsuit under the DCHRA."  Ndondji v. Interpark Inc., 768 F. Supp. 2d 263, 285 (D.D.C. 2011) (citing, among others, Fowler v. District of Columbia, 122 F. Supp. 2d 37, 40 (D.D.C. 2000) ("While the DCHRA generally does not require exhaustion of administrative remedies, there is a statutory exhaustion requirement for employees of the District of Columbia government.") and Kennedy v. District of Columbia, 654 A.2d 847, 863 (D.C. 1994) ("We [have] clearly stated that D.C. government employees, unlike non-government employees, are required to exhaust their administrative remedies available to them under the [DCHRA].")).

[13]     Although the defendants argue that the plaintiff's hostile work environment claim should be dismissed because Ms. Thomas, as an individual, is not the proper party, Defs.' Mem. at 21 n.8, the District of Columbia Court of Appeals has held that when a person fits within the DCHRA definition of an "employer," D.C. Code § 2–1401.02(10) (including, among others, "any person acting in the interest of such employer, directly or indirectly"),

(continued . . . )

states "frequently referred to [him] and another male employee in negative and derogatory terms.

For example, [Ms. Thomas] often[] referred to [the p]laintiff and another male employee as 'box

lifters'" and also "referred to another male employee as her 'pole dancer.'"  Compl. ¶¶ 49-50.

The third element, whether the harassment was based on a plaintiff's membership in a

protected class, is less clear.  Other than the fact that the name-calling was directed at the

plaintiff and other "older males on staff," id. ¶ 69, the plaintiff fails to connect Ms. Thomas's

conduct to either his age or his gender.[14]

The fourth element, whether "the harassment is severe and pervasive enough to affect a

term, condition, or privilege of employment,'" Campbell-Crane & Assocs., 44 A.3d at 933, is not

satisfied.  "The harassment must consist of more than a few isolated incidents[,] . . . and

genuinely trivial occurrences will not establish a prima facie case."  Nicola v. Wash. Times

Corp., 947 A.2d 1164, 1173 (D.C. 2008) (alterations in original) (internal quotation marks

omitted).  Courts must consider the totality of the circumstances, "including 'the frequency of the

discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it interferes with an employee's work performance.'"  Id.

---

( . . . continued)

that person can be held individually liable under the DCHRA, Purcell v. Thomas, 928 A.2d 699, 715 (D.C. 2007) (holding that an individual who exercised "extensive supervisory, management and administrative authority over the [defendant] corporation," fit within the DCHRA definition of "employer" and was thus "individually liable to [the plaintiff] under the DCHRA"); see also MacIntosh v. Bldg. Owners & Mgrs. Ass'n Int'l, 355 F. Supp. 2d 223, 228 (D.D.C. 2005) ("[T]he law in the District of Columbia . . . provides for individual liability pursuant to the DCHRA.").  Moreover, "[c]ourts have held individuals liable under the DCHRA when they were personally involved in the discriminatory conduct."  King v. Triser Salons, LLC, 815 F. Supp. 2d 328, 331 (D.D.C. 2011).  Ms. Thomas is the Chief of Staff of the UPO, Compl. ¶ 7, is its Vice President of Administration, Defs.' Mem. at 4 & n.4, and "was acting, directly or indirectly, in the interest of [the UPO]" in those capacities, Purcell, 928 A.2d at 715.  Further, the plaintiff alleges that Ms. Thomas was personally involved in the alleged discriminatory conduct. Compl. ¶¶ 49-50.  Accordingly, for purposes of the DCHRA, it is inappropriate to dismiss the plaintiff's claim on the grounds that it was filed against Ms. Thomas in her individual capacity.

[14]        Indeed, the Court notes that in the section of the Complaint titled "Count #6 Hostile Work Environment," the plaintiff does not reference the name-calling, his age or his gender.  Compl. ¶¶ 101-102.

(quoting <u>Lively</u>, 830 A.2d at 890).  "[I]t is critical that, in bringing a hostile work environment

claim [under the DCHRA], the plaintiff establish <u>discriminatory</u> harassment."  <u>Id.</u>  While the

plaintiff alleges that Ms. Thomas called him "negative and derogatory" names "[t]hroughout

[his] employment," Compl. ¶ 49, the other factors do not weigh in the plaintiff's favor.  For

example, the plaintiff does not allege that he was physically threatened or that the harassment

interfered with his work performance.  Ms. Thomas's conduct, though bad-mannered, is more

consistent with "mere offensive utterance[s]," <u>Nicola</u>, 947 A.2d at 1173.  And the plaintiff has

not shown that Ms. Thomas's conduct "affected a term, condition, or privilege of employment."

<u>Campbell-Crane & Assocs.</u>, 44 A.3d at 933.

    Because the plaintiff does not connect the harassment to either his age or his gender, and

because he has not alleged that the harassment altered a term, condition, or privilege of his

employment, the plaintiff's hostile work environment claim must be dismissed.

## IV.  CONCLUSION

    For the reasons set forth above, the Court will grant the defendants' motion to dismiss

counts 1, 3, 5, and 6 of the plaintiff's complaint for failure to state a claim upon which relief may

be granted, and will deny the plaintiff's motion for a continuance as moot.[15]

    **SO ORDERED** this 10th day of October, 2012.

REGGIE B. WALTON<br>United States District Judge

---

[15]    The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.